Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| | | | |
|---|---|---|---|
| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
| CASE NUMBER | 97 C 5608 | DATE | 5/23/2000 |
| CASE TITLE | Sonja V. Hrobowski vs. William J. Henderson, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ■ Status hearing set for 6/21/2000 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant's motion to dismiss (Doc. No. 27-1) is granted, and Plaintiff's tort claim is dismissed. The motion for summary judgment (Doc. No. 27-2) is denied without prejudice to renewal of this motion on a more complete record. The parties are urged to meet and confer in an attempt to reach a settlement of their dispute.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 3 number of notices | Document Number |
| | No notices required. | MAY 24 2000 date docketed | 37 |
| ✓ | Notices mailed by judge's staff. | docketing deputy initials | |
| | Notified counsel by telephone. | 5/23/2000 date mailed notice | |
| | Docketing to mail notices. | ETV mailing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |

| | | |
|---|---|---|
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SONJA V. HROBOWSKI,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM J. HENDERSON,[1] POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE,<br><br>Defendant. | ) | No. 97 C 5608<br><br>Judge Rebecca R. Pallmeyer |

DOCKETED
MAY 24 2000

## MEMORANDUM OPINION AND ORDER

Plaintiff Sonja V. Hrobowski lost her job with the United States Postal Service when she refused to provide a medical release form necessary in order to complete a fitness-for-duty examination. In this lawsuit, she charges the Postal Service with failure to accommodate her disability, an emotional disorder, asserting claims under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and the Rehabilitation Act, 29 U.S.C. §§ 706, 794. The Postmaster General moves to dismiss the tort claim and for summary judgment on Plaintiff Hrobowski's disability claim. For the following reasons, the motion is granted in part and denied in part.

## FACTS

Plaintiff's response to Defendant's motion does not include a response to Defendant's Rule 56.1(a) Statement of Facts. Accordingly, those facts are undisputed for purposes of this

---

[1] William Henderson replaced Marvin Runyon as Postmaster General of the United States Postal Service and is therefore substituted pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

37

motion. Plaintiff Hrobowski was employed as a full-time mail handler at the Carol Stream, Illinois processing and distribution center. (Def.'s Rule 56.1(a) Statement ¶ 4.) On May 29, 1996, Robert Petrowski, manager of the Carol Stream facility, placed Hrobowski on paid administrative leave and directed her to report for a fitness-for-duty examination on May 31, 1996. (*Id.* ¶¶ 6, 9.) In his letter to Plaintiff, Petrowski explained that his reasons for requiring the examination were Plaintiff's "inability or unwillingness to follow instructions, repeated claims of illness due to stress, calls for ambulance assistance allegedly due to personal illness, repeated visits to the hospital emergency room during work hours allegedly due to personal illness, inappropriate and unacceptable conduct, and threatening remarks." (May 29, 1996 letter, Def. Ex. A-1 to Rule 56.1(a) Statement.)

Plaintiff missed the initial appointment, and the examination was rescheduled for June 5, 1996. (Def.'s Rule 56.1(a) Statement ¶¶ 11-12.) On June 5, 1996, Dr. Shashi Saigal examined Plaintiff and recommended a psychiatric examination, which was scheduled for June 7. (*Id.* ¶ 7.) Plaintiff appeared for her psychiatric examination on June 7, but the psychiatrist, Dr. Marvin Schwarz, concluded he needed additional medical records in order to complete the examination, including records from her treating physician and records of her most recent hospitalization. (*Id.* ¶¶ 16-17.) By letter dated June 15, 1996, Mr. Petrowski directed Plaintiff to submit her medical records to Dr. Schwarz by June 21. (*Id.* ¶¶ 18-19, Def.'s Ex. A-4.)

Plaintiff failed to provide the records or to sign a release to allow Dr. Schwarz unrestricted access to her medical records. (*Id.* ¶¶ 20-21.) In a July 1, 1996 letter, Mr.

Petrowski warned Plaintiff that she needed to provide the unrestricted release to Dr. Schwarz within three business days, and that as a result of her "refusal to cooperate," she was "being placed in a non-pay status." (*Id.* ¶ 22, Def.'s Ex. A-6.) The letter explained that Dr. Schwarz's report would be reviewed by "the postal contract doctor" (presumably Dr. Saigal), but that the report and medical records "would be treated as restricted medical information and would be handled in accordance with the proper laws and manuals including the EL 806 'Health and Medical Services.' "[2] Defendant asserts that the Postal Service's Medical Unit furnished Plaintiff with a blank medical release form, but that Plaintiff refused to sign it and drafted her own release, which was unacceptable to the Medical Unit. Neither a copy of the blank form, nor Plaintiff's version appear in the record, however, and Defendant has offered only hearsay evidence (Mr. Petrowski's declaration) concerning this correspondence.

On August 30, 1996, Mr. Petrowski again wrote to Plaintiff concerning the requirement that she furnish Dr. Schwarz with a release. (Def.'s Rule 56.1(a) Statement ¶ 29, Def.'s Ex. A-7.) That letter suggests that the draft release Plaintiff herself drafted had attempted to impose restrictions on the Postal Service's use of Plaintiff's medical information. The letter recounts that Dr. Schwarz had advised Plaintiff's attorney that her letter "was not an adequate release under the law, and that he has no control over the Postal Service's actions once he has released his findings." (*Id.*) Finally, the letter directed Plaintiff to submit a

---

[2] Although certain provisions of the "EL" (the court infers that this is a reference to the Postal Service's Employee and Labor Relations Manual) are quoted in an arbitration decision attached as Def.'s Ex. B-1, the court finds no reference in the record to the restrictions on dissemination of medical information, if any, set forth in EL 806.

release to Dr. Schwarz within five days, and warns that her failure to do so would result in termination. (*Id.*)

Plaintiff signed the requested release form on September 2, 1996. (Def.'s Rule 56.1(a) Statement ¶ 32, Def.'s Ex. A-8.) By September 6, however, she had second thoughts and wrote a letter to Dr. Schwarz in which she "exercis[ed] [her] rights to revoke this consent of release and/or authorization pertaining to my previous records to you . . . ." (*Id.* ¶ 33, Def.'s Ex. A-10.) Plaintiff's letter explained that she would send Dr. Schwarz another consent form, but not until Mr. Petrowski agreed to pay her for the time she had been on leave. (Def.'s Ex. A-10.) She asserted the same request in a September 6, 1996 letter to Mr. Petrowski, stating in that letter, "I would like to be immediately (prior to the examination), be given the appropriate administrative leave regarding the end and out time for Schwarz's appointment. You can trust my word that I will attend the second appointment." (Def.'s Ex. A-11.)

On September 18, 1996, the Postal Service notified Plaintiff that her employment was terminated, effective 30 days from that date. (Def.'s Rule 56.1(a) Statement ¶ 39, Def.'s Ex. A-12.) As the reason for her termination, Mr. Petrowski's letter cited Plaintiff's "Failure to follow instructions and to cooperate with a fitness for duty examination," specifically referencing her refusal to provide a medical release. (*Id.*) One week later, Dr. Saigal observed, "Due to [Plaintiff's] failure to cooperate in administrative matter in evaluating Ms. Hrobowski's mental status, I qualify her medically HIGH RISK for her position in the Postal Service." (Def.'s Rule 56.1(a) Statement ¶ 40, Def.'s Ex. A-13.)

Plaintiff filed a grievance challenging her removal, but her grievance was denied on

February 8, 1999. (Def.'s Rule 56.1(a) Statement ¶ 41-42, Def.'s Ex. B-1.) On November 6, 1996, she filed a formal EEO complaint alleging disability discrimination; as of November 10, 1999, no final decision on the merits of this claim had been issued. (Def.'s Rule 56.1(a) Statement ¶ 43; Decl. of Mae K. Grant, Def. Ex. C.) She filed this lawsuit on February 2, 1998. In her amended complaint, Plaintiff alleges that the Postal Service failed to accommodate her disability, an emotional disorder that results in a distrust of her superiors, by requiring her to "sign a consent that authorized [Dr. Schwarz] to disseminate all the information in [her medical] records to the Post Office." (Amended Complaint ¶ 14.)

## DISCUSSION

Defendant, the Postmaster General, has moved to dismiss Plaintiff's Federal Tort Claims Act claims and for summary judgment on Plaintiff's claim that her discharge constitutes disability discrimination. Plaintiff concedes the first of these arguments; in her memorandum, she acknowledges that she does not seek recovery for an accidental injury. (Memorandum in Opposition for the Motion for Summary Judgment (hereinafter, "Pltf.'s Memorandum"), at 8.) Plaintiff's allegations under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) are dismissed.

With respect to Plaintiff's disability claims, Defendant seeks judgment as a matter of law on several bases. First, Defendant correctly points out that Plaintiff has not properly invoked the court's jurisdiction, but this is a quibble. Plaintiff cites provisions of the Rehabilitation Act, 29 U.S.C. § 706 and 794, that do not provide a basis for an individual employment claim; but as Defendant concedes, such a claim may properly be brought under

section 501 of the Act, 29 U.S.C. § 791. This technical error is not fatal to ¶'s claim. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992) ("complaint need not point to the appropriate statute or law in order to raise a claim"). It is also well-settled under existing case law that the standards applicable to the ADA apply to Rehabilitation Act claims as well. *See Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir.1996). Indeed, some courts have concluded that federal employers have greater duties to accommodate disabled workers under section 501 than the duties owed by employers under the ADA. *Woodman v. Runyon*, 132 F.3d 1330, 1337-38 (10th Cir. 1997) (citing *Fedro v. Reno*, 21 F.3d 1391, 1398-9 (Rovner, J., dissenting) (citations omitted)).

Defendant's second argument also need not detain the court. The Postal Service argues in its opening memorandum that Plaintiff can not prevail on a claim of disability discrimination under the burden-shifting approach initially established in the race discrimination context in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Under that framework, where an employee adduces evidence that creates an inference that her protected status was the reason for adverse action, the employer must articulate a legitimate non-discriminatory reason for its action. The Postal Service argues here that Plaintiff Hrobowski can not show that the Postal Service's stated reason for her termination – her failure to cooperate with a fitness-for-duty examination – was a pretext. The court agrees with this analysis, to the extent Plaintiff is pressing a disparate treatment claim. *Cf. Foster v. Arthur Andersen, LLP*, 168 F.3d 1029 (7th Cir. 1999) (recognizing distinction between failure to accommodate claims and claims of disparate treatment); *Bultemeyer v. Ft. Wayne*

*Community Schools*, 100 F.3d 1281, 1283 (7th Cir. 1996) ("Recently, we have decided several reasonable accommodation cases in this circuit, all without using the *McDonnell-Douglas* analysis." [collecting cases]). There can be little dispute that it was Hrobowski's refusal to sign an unrestricted medical release that resulted in her termination.

The real issue here is whether Defendant's obligation to make an accommodation to Plaintiff's alleged disability required some other action in response to her refusal to sign the proposed release. When a disabled person is not able to perform the essential functions of the job, the court must also consider whether any "reasonable accommodation" by the employer would enable the handicapped person to perform those functions. *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 288 n.17 (citing 45 C.F.R. § 84.3(k) (1985)). Accommodation is not reasonable if it either imposes an undue financial or administrative burden on the defendant, or requires a fundamental alteration of the job. *Id.* Once the employer is aware of the disability, however, the employer has a duty to offer reasonable accommodations for the disability so as to allow the employee to continue working. *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996). In *Beck*, the Seventh Circuit explained in some detail the "interactive process" component of the duty to reasonably accommodate, a process that requires participation by both parties. In determining whether summary judgment should be granted in a claim of failure to accommodate, courts are directed to look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other determine what specific accommodations are necessary:

> A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility. For example, the cause of the breakdown might be missing information. . . . Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process. The determination must be made in light of the circumstances surrounding a given case.

*Id.* at 1135-36.

Plaintiff here argues that it was the Postal Service, not Plaintiff, who failed to participate in good faith in the interactive process because it made "no attempt . . . to reach a middle ground" on the issue of the release. In Plaintiff's view, Defendant's demand that she either provide an unrestricted medical release or be terminated was the wrong approach to follow with someone who suffers from mental illness. She cites *Bultemeyer*, where a custodian who suffered from a variety of mental illnesses refused to take a physical examination necessary to return to work because of an "irrational fear" that his new job assignment would be too stressful. The court acknowledged that "the irrationality of these fears may be frustrating to [the plaintiff's employer] . . . but [the employer] had a duty to engage in the interactive process and find a reasonable way for him to work despite his fears." 100 F.3d at 1286. Here, similarly, Plaintiff urges, the Postal Service had an obligation to make some attempt to accommodate her fears concerning disclosure of her medical records (Pltf.'s Memorandum, at 7.) Specifically, she suggests, the Postal Service should have attempted to find out from Dr. Schwarz whether he could have completed his evaluation of

Plaintiff without review of her previous records; Dr. Schwarz might have attempted to talk with Plaintiff's doctor in her presence rather than reviewing records; or he could have agreed not to disclose the information in her records. (*Id.*)

The court sympathizes with the frustration generated by this argument. Arguably, the fitness-for-duty examination process itself constitutes the "interactive process" called for by federal law in determining whether and to what degree an accommodation of an employee's disability is required. Indeed, here Plaintiff's refusal to sign a medical release might reasonably be characterized as "the cause of the breakdown," in the language of the *Beck* court. This case is arguably distinguishable from *Bultemeyer*, where the court recognized a burden on the employer to communicate with the employee regarding limitations on his job assignment rather than limitations on his ability or willingness to be evaluated by a psychiatric professional. Notably, there is at least some indication in the record that Plaintiff's unwillingness to execute an unrestricted medical release was an attempt to leverage her own return to pay status rather than a genuine reluctance to disclose her medical records.

Nevertheless, the court is unwilling to grant summary judgment on this record. There is at least an issue of fact concerning the reasonableness of Defendant's response to Plaintiff's expression of concern regarding the confidentiality of her medical records. As noted, Defendant has not offered any nonhearsay evidence concerning the release form that Plaintiff drafted, evidently some time between July 1 and August 30. Defendant does characterize that letter as an attempt to impose restrictions on the Postal Service's use of Plaintiff's medical information; Defendant's response to Plaintiff's letter also reflects Dr. Schwarz's

understanding that he would have "no control over the Postal Service's actions" once he released information to them. Apart from the statement that the letter was "not adequate under the law," the Postal Service does not explain why the language Plaintiff drafted precluded an effective and fair evaluation of her disabilities. Nor does Defendant explain how the rule or regulation referred to as "EL 806" might protect the confidentiality of Plaintiff's medical data. In short, the record does not satisfy the court that there is no dispute of material fact concerning Defendant's meaningful and reasonable participation in the "interactive process."

In denying summary judgment, the court hastens to note that even a victory for Plaintiff on the merits of this case would not support an order of reinstatement without some further evaluation. At some point or another, Plaintiff will be required to undergo a psychiatric examination before she can be returned to work. Moreover, the court rejects Plaintiff's implicit suggestion that she is necessarily entitled to back pay for any period of time during which she was on unpaid leave while negotiating with the Postal Service concerning the medical release. There is no suggestion of any bad faith in the Postal Service's request that Plaintiff undergo a fitness-for-duty examination. This court finds no basis in the Rehabilitation Act for a conclusion that an employer must continue to pay an employee during the time that she is on administrative leave pending a physical or mental status examination.

## CONCLUSION

Defendant's motion to dismiss (Doc. No. 27-1) is granted, and Plaintiff's tort claim is dismissed. The motion for summary judgment (Doc. No. 27-2) is denied without prejudice to renewal of this motion on a more complete record. The parties are urged to meet and confer in an attempt to reach a settlement of their dispute. Status conference is set for June 21, 2000, at 9:00 a.m.

ENTER:

Dated: May 23, 2000

REBECCA R. PALLMEYER
United States District Judge