Minute Order Form (06/97)

55-6

# United States District Court, Northern District of Illinois

| | | | |
|---|---|---|---|
| **Name of Assigned Judge or Magistrate Judge** | Rebecca R. Pallmeyer | **Sitting Judge if Other than Assigned Judge** | |
| **CASE NUMBER** | 97 C 5608 | **DATE** | 3/15/2001 |
| **CASE TITLE** | Sonja V. Hrobowski vs. Marvin T. Runyon, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment (Doc. 41-1) is granted. Judgment is entered in favor of Defendant and against Plaintiff Sonja V. Hrobowski.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | 3 number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | MAR 16 2001 date docketed | 53 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | MW docketing deputy initials | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 3/15/2001 date mailed notice | |
| ETV | courtroom deputy's initials | ETV mailing deputy initials | |

ED-7 FILED FOR DOCKETING 01 MAR 15 PM 4:05

Date/time received in central Clerk's Office

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SONJA V. HROBOWSKI,<br><br>Plaintiff,<br><br>v.<br><br>MARVIN T. RUNYON, Postmaster General United States Postal Service, UNITED STATES POST OFFICE, UNITED STATES OF AMERICA,<br><br>Defendants. | ) | No. 97 C 5608<br><br>Judge Rebecca R. Pallmeyer |

DOCKETED
MAR 1 6 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Sonja V. Hrobowski, a former employee of the U.S. Postal Service, alleges that the Postal Service failed to accommodate her emotional problems as required by the Rehabilitation Act, 29 U.S.C. § 791, *et seq.* Last year, Defendant sought summary judgment, arguing that Plaintiff could not prove a failure to accommodate her disability. On May 24, 2000, this court denied Defendant's motion for summary judgment, concluding that there was a disputed issue concerning the reasonableness of Defendant's response to Plaintiff's concerns regarding the confidentiality of her medical records. *Hrobowski v. Henderson,* No. 97 C 5608, 2000 WL 682673, at *6 (N.D. Ill. May 24, 2000). The court found, further, some dispute of material fact concerning Defendant's meaningful and reasonable participation in the interactive process.

Defendant now moves again for summary judgment, this time arguing that Plaintiff is not a "qualified individual with a disability" within the meaning of federal law. For the

53

reasons set forth below, Defendant's motion is granted.

## FACTUAL BACKGROUND

Until 1996, Plaintiff was employed as a full-time mail handler for the Postal Service at the Carol Stream, Illinois processing and distribution center. Concerned about Plaintiff's reactions to stress, her "inappropriate and unacceptable conduct, and threatening remarks," *Hrobowski*, 2000 WL 682673, at *1, Plaintiff's supervisor placed her on paid leave in May 1996 and directed her to undergo a fitness-for-duty examination. Plaintiff refused to provide a medical release form necessary in order to complete the examination, however, and on September 18, 1996, the Postal Service notified Plaintiff that her employment was terminated, effective 30 days from that date. As the reason for her termination, the letter cited Plaintiff's failure to follow instructions and to cooperate with the examination, specifically including her refusal to provide a medical release.

On February 2, 1998, Hrobowski filed suit under the Rehabilitation Act.[1] Plaintiff claims she is disabled by an emotional disorder and that Defendant failed in its duty to accommodate this disability by requiring her to "sign a consent that authorized [Dr. Schwarz] to disseminate all the information in [her medical] records to the Post Office." (Amended Complaint ¶ 14.) Having failed in its effort to demonstrate that there are no disputes

---

[1] Plaintiff has based her arguments on the Americans with Disabilities Act (ADA) rather than the Rehabilitation Act. Because Rehabilitation Act claims are analyzed under the same standards used for ADA claims, *see Gile v. United Airlines, Inc.*, 95 F.3d 492, 497 (7th Cir. 1996), this court likewise will consider ADA precedent in determining whether summary judgment is proper.

concerning its efforts to accommodate her, Defendant now argues that it had no duty to accommodate her at all because Plaintiff is not an otherwise qualified individual with a disability. Defendant contends, first, that Plaintiff's emotional disorder does not constitute a disability. As its second argument, Defendant urges that in her claim for Social Security disability benefits, Plaintiff has sworn that she is unable to return to work. Thus, although disabled, Plaintiff is not "otherwise qualified" for employment.

Plaintiff urges that these arguments are inconsistent: if Plaintiff's emotional disorder does not constitute a protected disability at all, then her condition can not be deemed so disabling that no accommodation could enable her to work. The court agrees that Defendant's contention that Plaintiff was not truly disabled does not fit well with its simultaneous argument that she is in fact completely disabled from working. As explained below, the court is unpersuaded by Defendant's first argument but finds the second one dispositive.

## DISCUSSION

Defendant suggests that Plaintiff can not establish a protected disability for two reasons. First, Defendant asserts that Plaintiff has offered no "medical documentation demonstrating her illness." (Defendant's Memorandum in Support of Summary Judgment, at 5.) In addition, to the extent that Plaintiff's emotional condition renders her unable to work for particular supervisors, such a condition is not a disability within the meaning of federal law. (*Id.* at 4.) This court finds neither of these suggestions persuasive.

Under federal law, a disability is a physical or mental impairment that substantially

limits one or more major life activities. *Contreras v. Suncast Corp.*, 237 F. 3d 756, 762 (7th Cir. 2000), citing 42 U.S.C. § 12102(2); *see also* 45 C.F.R. § 84.3(j)(2)(ii). Working is a major life activity[2], but an individual will be substantially limited in this activity only if she is significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes. *Webb v. Clyde L. Choate Mental Health and Dev. Ctr.*, 230 F.3d 991, 998 (7th Cir.2000). Defendant argues that Plaintiff has offered no evidence on this issue beyond a showing that she is unable to perform this particular job for this employer.

An individual is not substantially limited in working just because she is unable to perform a particular job for one employer. Standing alone, a personality conflict between an employee and a supervisor--even one that triggers the employee's depression--is not enough to establish that the employee is disabled, so long as the employee could still perform the job under a different supervisor. *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1060 (7th Cir. 2000). *See also Palmer v. Circuit Court of Cook County*, 117 F.3d 351, 352 (7th Cir. 1997) ("a personality conflict with a supervisor or coworker does not establish a disability within the meaning of the disability law, even if it produces anxiety and depression, as such conflicts often do") (citation omitted); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996)

---

[2] In *Sutton v. United Airlines*, the Supreme Court expressed concern regarding whether "working" should be considered a major life activity because of the circularity of a claim made on this basis. *Sutton v. United Airlines,* 527 U.S. 471, 492 (1999). Until the Supreme Court decides otherwise, however, this court will follow the precedent of this circuit and regard "working" as a major life activity. *See also Schneiker v. Fortis Insurance Co.,* 200 F.3d 1055, 2000 WL 10251, at *6 (7th Cir. 2000); *Sinkler v. Midwest Property Management Ltd.,* 209 F.3d 678, 685 n.1 (7th Cir. 2000).

(plaintiff's claimed disability, the stress and anxiety caused by her supervisor, is not recognized as such under the ADA, and her major life activity of working was not "substantially limited" if she merely cannot work under that particular supervisor); *Stewart v. County of Brown*, 86 F.3d 107, 111 (7th Cir. 1996) (sheriff's order of psychological evaluations and conclusion that plaintiff was temperamentally unfit to serve as a sheriff's deputy "do not amount to a showing even of a perception of a mental impairment that substantially limits one or more of the major life activities").

Nevertheless, the fact that Plaintiff's emotional difficulties created conflicts with her supervisors does not require the conclusion that her condition is not a covered disability. *See Duda v. Board of Educ. of Franklin Park Public Sch. Dist. No. 84*, 133 F.3d 1054, 1059 n.9 (7th Cir. 1998) (distinguishing between personal conflicts with others, or mere temperament and irritability, which do not amount to "disabilities" under the ADA, and medically diagnosed mental conditions, which do). The court concludes that Defendant has not demonstrated that it is entitled to summary judgment on this theory: At her deposition, Ms. Hrobowski testified that she suffers from stress, chronic headaches, sleeplessness, nightmares, distrust, paranoia, anxiety attacks, mood swings, and depression. (Hrobowski Dep., Ex. C to Defendant's Rule 56.1(a) Statement, at 60, 67-68, 97, 103, and 175.) At times she has been suicidal. (*Id.* at 175.) In October 1995, Plaintiff was hospitalized for five days, diagnosed as suffering from major depression with psychotic features. (Hartgrove Hospital Discharge Summary, Exhibit B to Plaintiff's Rule 56.1(b)(1) Statement.) In a letter dated March 15, 1996, Plaintiff's treating physician stated that she had experienced "problems within her job

site supervisors and peers" which he described as having made "a tremendous impact on her emotional and physical health/mental health." (Letter of Walter A. Pedemonte, M.D., 3/15/96, Exhibit A to Plaintiff's Rule 56.1(b)(1) Statement.) Although Dr. Pedemonte recommended that Plaintiff be transferred to another job site, and believed that her health would improve in response to such a change (*id.*), such a recommendation is not tantamount to an acknowledgment that Plaintiff's disorder is limited to difficulties with particular supervisors.

Indeed, the record supports the conclusion that Plaintiff does suffer from a disability as defined in the Rehabilitation Act and the ADA, and that her disability is so severe that she is not "otherwise qualified" for work as a mail handler. At her deposition, Plaintiff described her severe symptoms, set forth above, and testified that her condition has not improved since she left her position with the Postal Service. Indeed, she has not worked at all since her termination by the Postal Service due to depression because, in her words, "[m]y doctors determined that I couldn't handle it." (Hrobowski Dep., at 173-74, 178.) Plaintiff was hospitalized for depression and suicidal thoughts in June 1996, just after she went on leave, and again in April 1997. (*Id.* at 178.) Plaintiff described her current emotional condition, even with medication, in these words:

> For one, I have insomnia. I can't sleep. I'm depressed, suicidal. I suffer mood swings from, you know, from the depression. I suffer anxiety attacks. . . . Sometimes I get terrified in different situations; you know, like social type situation, that I, you know, I am not too, um. . . My mind is kind of slow.

(*Id.* at 177, 178.)

Plaintiff herself does not argue that she is able now to work for the Postal Service (or any other employer), with or without accommodation. She urges, instead, that she was qualified on June 6, 1996, or that "we do not know the Plaintiff's precise condition on June 6, 1996 because of [Defendant's] violation of ADA." (Plaintiff's Response to Motion for Summary Judgment, at 3, 4.) That assertion does not fit well with the facts of this case, however. Plaintiff, who bears the burden of proof on this issue, offers no evidence that her condition in 1996 permitted her to return to work at the Postal Service. To the extent that Plaintiff suggests she might have been able to work for the Postal Service under some other supervisors, the court finds it significant that since leaving the Postal Service in 1996, Plaintiff has not sought any other employment.

Significantly, Plaintiff herself has sworn that she was in fact disabled from employment no later than May 1996. Plaintiff applied for Social Security disability benefits on February 14, 1997. Her application for those benefits included the sworn statement that she has been unable to work due to her disability since May 1996. (Application for Disability Insurance Benefits, Ex. F to Def.'s Local Rule 56.1.) A February 10, 1997 letter from Dr. Pedemonte stated that Plaintiff suffered at that time from "severe depression isolating herself, having severe changes in her appetite, sleep and bowel habits, [and] nightmares of being harassed and persecuted by her supervisors." (2/10/97 Letter from Walter A. Pedemonte, M.D., Ex. G to Defendant's Rule 56.1(a) Statement.) Dr. Pedemonte concluded, "Patient is unable to work." (*Id.*) Similarly, Thomas J. Como, a social worker who evaluated Plaintiff in connection with her Social Security claim, concluded on March 19, 1997 that she suffered

from major depression with psychotic features and that her illnesses prevent her from carrying out and responding to supervision or dealing with work place pressures. (Evaluation by Thomas J. Como., LCSW, Exhibit I to Defendant's Rule 56.1(a) Statement.)

There are situations in which a Social Security claim and a Rehabilitation Act claim can comfortably exist side by side. Because the Social Security Administration does not take into account the possibility of "reasonable accommodation" in determining eligibility, a Rehabilitation Act plaintiff's claim that she can perform her job with reasonable accommodation may well prove consistent with a Social Security claim that she could not perform her own job, or a different job, without it. *Feldman v. American Mem'l Life Ins. Co.*, 196 F.3d 783, 790 (7th Cir. 1999). But a plaintiff cannot avoid summary judgment merely by asserting that she is a qualified individual when she has made contradictory statements to the Social Security Administration regarding her disability. *Id.* at 791.

As the Supreme Court recognized in *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999), in some circumstances, an earlier Social Security claim may genuinely conflict with an ADA claim. The court concludes this is such a case. Under *Cleveland*, a plaintiff must resolve the apparent inconsistency by providing an explanation which warrants a reasonable juror's conclusion that the plaintiff could perform the essential functions of her job with or without reasonable accommodation. *Cleveland*, 526 U.S. at 806. The court cannot assume that such a contradiction can be resolved without a direct explanation. *Feldman*, 196 F.3d at 792. Plaintiff Hrobowski has provided no explanation for the apparent contradiction between her complaint here and her earlier sworn claim of disability dating to

May 1996. Plaintiff's sworn assertion in her application for disability benefits that she is unable to work negates her contention in this case that she can (or could) nevertheless perform the essential functions of her job.

## CONCLUSION

The record here is inconsistent with Defendant's argument that Plaintiff's condition does not constitute a disability. To the contrary, the court concludes that Plaintiff's condition was in fact disabling and that she is and was unable to work in any capacity, with or without an accommodation. She is therefore not an "otherwise qualified" individual for purposes of the Rehabilitation Act. Defendant's motion for summary judgment (Doc. No. 41-1) is granted.

ENTER:

Dated: March 15, 2001

REBECCA R. PALLMEYER
United States District Judge